"Item. I give, grant, devise, and bequeath unto my loving wife, Allice Marsden, all my personal estate of what kind or nature whatsoever, and after her decease to the use of my three daughters, Hannah, Allice, and Peggy, to their heirs, executors, and assigns forever, and to no other use or uses whatsoever." And soon afterwards died, leaving his widow and three daughters living at his death.
Hannah, one of the daughters, intermarried with Arthur Mabson in 1754, by whom she had issue, Allice, one of the complainants, and *Page 386 
shortly afterwards died — Arthur Mabson, her husband, also died before Allice the widow.
In 1758, Allice Marsden, the widow, died, leaving the other two daughters, Allice and Peggy, and the granddaughter, Allice, living.
 In 1765, Allice, the daughter, intermarried with Benjamin Herron, who died soon afterwards.
(469) In 1785, Peggy, the other daughter, intermarried with John Lordan, one of the defendants, by whom she had issue, John Lordan, another of the defendants, and died.
In 1772, Allice, the granddaughter, intermarried with Samuel Campbell, the other defendant.
After the death of the widow, Allice and Peggy, the daughters, took possession of the whole estate, and they and the said John Lordan have remained in possession thereof ever since, and enjoy the rents and profits of the same.
The complainants claim one-third part of the estate of Rufus Marsden, and the profits accrued since the death of Allice, the widow, and pray an account and division.
To this bill the defendants demurred, and for cause stated, that Rufus Marsden, in the bill mentioned, devised the property claimed to his three daughters, Hannah, Allice, and Peggy, as joint tenants, and that Hannah died, Allice and Peggy surviving.
1st. They took by purchase. Although the general rule be acknowledged, that where the heir takes nothing more by the devise than he would without, it, he shall be considered in by descent (for reasons however which exist not in this country). Yet wherever the ancestor devises the estate to his heir, with other limitations than the cause of descents would direct, or makes use of words which constitute and convey an estate, and which draws with it other incidents and qualities, the heir to whom the same is so devised shall be said to be in by purchase. Hob., 29, 30; Gilb. on Devises, 112, 113; Powell on Devises, 439; 2 Bl. Com. by Christian, 241, note; 1 Cro., 431. The words made use of by the devisor are such as convey an estate in joint tenancy; the incidents and qualities of which differ from an estate in coparcenary. Parceners cannot have an action of waste against each other by virtue of (470) the Stat. of West. II, nor can they have an action of account, by the 4 Ann, as joint tenants and tenants in common. Parceners alone were compellable by common law to make partition; they have but *Page 387 
one estate, and do not hold by distinct moieties as tenants in common, and there is no survivorship among them as among joint tenants. Therefore, wherever an estate is devised by words which constitute either an estate in common, or in joint tenancy, though to the persons who are the heirs of the devisor, they take by purchase and not by descent; because the qualities incident to those estates are not incident to such an estate as the heirs would take, if considered in by descent.
2d. The devisees took as joint tenants, and not as tenants in common. Joint tenancy was anciently favored by the laws; and although the reasons which induced a construction of deeds and wills, which tended to the support of joint tenancy, do not exist with the same force as formerly, yet the rule is still the same. That wherever the estate is given to two or more, without explanatory words, the persons to whom it is given take as joint tenants; for notwithstanding the reasons have failed upon which the rule was founded, the rule itself still exists, in the same manner as all other rules of law exist and are in force, without having the reasons on which they were built to support them in their operation. This principle is recognized by Powell in his Treatise on Devises, 356. The following authorities apply, to prove that the words of Marsden's will convey to the devisees an estate in joint tenancy. 3 Lev., 127; 1 Leo., 112, 113, 315; Cro. Eliz., 431; Gilb. on Devises, 113; Powell on Devises, 439; Owen, 65.
No instance can be produced where such words, without some other words severing the estate, were held either in law or equity to convey a tenancy in common. That the rule is still the same as formerly, the opinions of the first law characters in the kingdom of Great Britain, the late commentator on Coke upon Littleton, will confirm . . . Co. on Litt., 190, 6 note; 3 Ves. jun., 628.
It is also to be observed that the construction of wills is the (471) same in a court of equity as in a court of law. 2 Bur., 1108; 3 Bl. Com., 435; 2 Com., 537; 2 Brown, 233. It is therefore concluded, on the part of the defendants, that the demurrer should be maintained, inasmuch as the authorities prove that the words made use of by the will of R. Marsden, convey an estate in joint tenancy; which drawing with it other incidents than such as are attached to an estate in coparcenary, places the devisee in of an estate by purchase, and not by descent.
1st. The rule of construing wills at the present day is that the intention of the testator shall prevail. 3 Bur., 1634; 3 Atk., 619; 5 Bur., 2703; 2 Bro. Ch., 51. *Page 388 
2d. The old rule, which I do not dispute, was established in very ancient times, when the Judges favored joint tenancies, in order to avoid multiplications of tenures and of services. Salk., 158, 392; 9 Mod., 159.
3d. As the tenures wore off the rule was gradually departed from, until the intent and not the words became the governing principles, and induced the Judges to construe the words as conveying a tenancy in common; first in wills and then in deeds. 2 Ves., 252, 259; 2 Atk., 121; 3 Atk., 731; 1 P. W., 14; Cow., 660.
4th. If the intent is now to govern, the daughters took as tenants in common, for the intent of their father was that they should take as tenants in common, and not as joint tenants.
1. For the same reason as in 2 Ves., 252, a settlement upon children. He could not mean that if one died leaving children, that those children should not have anything.
2. He was a layman, and not knowing the use of words has thrown in a number, hoping they would discover his intentions, "Executors." How could the property go to the executor of Allice, if it survived upon her death? Suppose a devise by Allice to her executors.
(472) 3. "Administrators." How could it go to them, if it survived upon her death?
4. "To no other use or uses." If it survives does it not go to those who are not the heirs of Allice, to her sister instead of her child, and directly contrary to the intention of the testator, and the words of the will?
5th. These are the very words the Legislature has used to sever the joint tenancy. Iredell, 489.
6th. In the clause relative to the personalty, the same words were used, and no one can doubt the testator's intentions, that the part of each child should go to her executors, consequently that a will might be made of it, and for want of a will that it should go to administrators. The same words in the same will must of necessity have the same meaning.
It is not doubted, but that if a person devises land to one who is his next heir, and his heirs, the devise is void, and the heir shall take by descent; or if a testator devise that his lands shall descend to his son, the devise is void, and the devises shall be in by descent. Powell on Devises, 427, 428, and the authorities there cited. 1st. Because it was for the benefit of creditors.2d. Because the lord would have been defrauded of the fruits of his seigniory, the consequence of descent. But wherever the devise makes an alteration of the limitation *Page 389 
of the estate, from that which takes place in the case of descent, then the principle ceases to operate, and the heir takes by purchase. Pow. Dev., 439. In the present case, if the lands, etc., had descended to the three daughters, they would have taken as coparceners. Survivorship therefore never could have taken place between them. But the testator, after giving a life estate to his wife in the premises, gives, grants, etc., the use of them to his three daughters, named Hannah, Allice, and Peggy, and to no other use or uses whatsoever.
It is admitted that the words made use of in this devise, in feudal times, would have created an estate in joint tenancy — the reason assigned why joint tenancies were favored in those times is, that it prevented a multiplication of tenures. But it is said, that as the (473) feudal tenures wore off, this rule has been gradually departed from; that the intent and not the words should form the rule of decision. It is true that joint tenancies are less, and tenancies in common are more favored than they anciently were, particularly where a father is making provision for his children, and makes use of any words which a court can properly lay hold of and make instrumental for that purpose. 1 P. W., 14; 2 Atk., 122; Cowp., 660; 2 Ves., 252, 256; 3 Atk., 731. But every one of these cases proves that an estate created by the same words that are made use of in the present instance, must be a joint tenancy. The ground of decision in every one of them was particular words made use of, from which the court collected an intent in the devisor to create a tenancy in common; such as, "equally to be divided," etc., "respectively," etc. But we know of no case, even in a will or in deeds, which derive their operation from the statute of uses, where the same or similar words are not made use of, that a similar determination has taken place; so that these cases are rather exceptions to the general rule; and as no words are made use of here that can bring the case within any of the exceptions, it must be considered a joint tenancy.
Can it be presumed, in the case of Regden v. Valliers, as reported in 2 Ves., 252, and 3 Atk., 731, above cited, that Ld. Hardwicke would have made the same determination, had the words "equally to be divided between them," not have been made use of in this deed? Or would his reasoning have been applicable to the case, had these words been omitted? Although the reasons that formerly favored joint tenancy do not hold now so strong as formerly, yet the rules to which they gave rise in many respects exist. Pow. Dev., 355 — although frequently inconveniences are felt from them. We therefore think that the words made use of in this device create a joint tenancy, there being no particular circumstances or words in it from which an intent can be collected that *Page 390 
the testator meant to convey a tenancy in common. Pow. Dev., 439; Cro. Eliz., 431; 2 Vern., 545; 3 Lev., 127, 128; Co. Litt., 189; 1 Lev., 112.
(474) Bill dismissed with costs.
Judge TAYLOR gave no opinion, having been of counsel in the cause.
Cited: McKay v. Hendon, 7 N.C. 211; Yelverton v. Yelverton, 192 N.C. 617.
NOTE. — On the first point, see University v. Holstead, 4 N.C. 289;McKay v. Hendon, 7 N.C. 209.
On the second, see Act of 1784 (1 Rev. Stat., ch. 43, sec. 1), by which the principal incident of joint tenancy, to wit, survivorship, is abolished.